[No. 21723. Department Two. August 8, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. TENNEL
WILLIS, *Appellant.*[1]

*Fred M. Bond,* for appellant.

*Herman Murray* and *Alfred Thompson,* for respondent.

MILLARD, J.—The defendant was found guilty by the verdict of a jury of the offense of unlawfully engaging "in the manufacture of intoxicating liquor, to wit, moonshine whiskey, for the purpose of sale, barter or exchange." The defendant's motions in arrest of judgment and for a new trial were overruled. From the judgment and sentence pronounced against him on the verdict, the defendant appeals.

The conclusion we have reached obviates the necessity of considering any of the errors alleged except that of the insufficiency of the evidence to justify the verdict. All of the testimony for the state was given by two deputy sheriffs of Pacific county. In substance, they testified that, about four o'clock of the afternoon of February 12, 1928, they discovered a still in a tent

[1]Reported in 279 Pac. 578.

in the woods. Seeing footprints around the tent, indicating that some one had been there recently, they followed the trail to the door of a house, which was a cook house, bunk house and dining room in the lumber camp owned by the appellant's uncle. The tent in which the still was located is about nine hundred feet from the door of this house by way of the path or trail in which the tracks were made.

Receiving no response to their hammering on the door, one of the deputy sheriffs went to the back of the house and peered through a window of what was apparently a bedroom. He saw the appellant kicking off a pair of pants in the middle of the floor. The deputy called to the appellant to open the door. After a slight delay, the door was unlocked by the appellant. The deputies discovered, on their entry into the room, a pair of shoes in the middle of the floor, as well as a pair of pants which they assumed were the same as those one of them saw the appellant removing when the deputy looked through the window pane.

The shoes were muddy and, from their appearance, had recently been used. On the shoes were clay and black mud. The officers concluded that the clay was from the place where the still was located, and that the mud was from the hollow through which the trail led. These shoes were calked, being what is known as loggers' shoes. The officers took the shoes and fitted them into the impressions, or tracks, in the trail, and they testified that the hob nails in the shoes identified them as the ones that made the imprints or tracks in the trail. Another pair of loggers' shoes was found in the room, but they were dry and had not been worn for a long time.

When the deputies entered the room, the appellant was wearing a pair of light shoes. He disclaimed ownership of the loggers' shoes, both the wet and

the dry pair. He did own one pair of loggers' shoes which were in a rooming house in Raymond, some miles distant from the camp. No bottles or liquor were found in the room. The deputies testified that they did not find anything that had any connection with a still except the wet shoes. The officers found, as they were going to the still, two empty five-gallon kegs, in sacks, about fifty feet from the still, near a stump. The path or trail is a well-beaten one, through soft ground; in fact, it was muddy in places the date of appellant's arrest. The lumber camp is the property of appellant's uncle.

Appellant was employed Friday afternoon, February 10, to watch the camp, which was closed the latter part of September, 1927. Twice, prior to the date of his arrest, the appellant had been at the camp —the latter part of September, 1927, and one day in December, 1927, when he went to the camp to assist in the removal of a set of chain blocks. The appellant testified that he did not have any knowledge of the still, and that the bedroom in which the shoes and pants were found was not used by him. He slept in a bunk by the stove in the dining room of the cook house. He also testified that he did not own the pants or the shoes, and denied that he had ever worn them. The tent in which the still was found was back of the Willis Lumber Camp. The record does not disclose on whose property it was located.

Other than the foregoing there is nothing connecting the appellant with the operation of the still, nor is there any other evidence that he knew that intoxicating liquor was being manufactured.

True, circumstantial evidence will sustain a conviction of the violation of the liquor laws where the evidence points to the guilt of the accused with some degree of certainty, and when the guilt is shown be-

yond a reasonable doubt. Unless the facts are such as to exclude to a moral certainty any hypothesis but that of the guilt of the accused, the evidence is insufficient. Mere suspicions, probabilities or suppositions do not warrant a conviction.

What is the evidence of appellant's guilt?

A still, containing one thousand gallons of mash, was found in a tent nine hundred feet from a house in which the appellant had lived as a watchman for a lumber camp for approximately forty-eight hours prior to the discovery of the still. In a trail or path leading from that tent to the door of the house, were tracks made by loggers' shoes. The appellant was seen in a room of that house changing his trousers. No shoes were seen at that time, either on or off the appellant's feet, nor was the appellant even seen by the witnesses in the act of placing upon, or removing from, his feet, shoes of any kind. In that room, the officers found a pair of loggers' shoes, damp and muddy. The tracks in the path were identified as having been made by this pair of shoes, by reason of the imprints or indentations made in the path by hobnailed shoes such as these. There was no evidence who owned or controlled, or was in possession of, the land on which the still was located. There was no evidence connecting the appellant with the maintenance of the still.

The foregoing facts are not sufficient, within themselves, under any rules of evidence, to overcome or rebut the legal presumption of innocence which attends any one accused of the commission of a crime. It is desirable that infractions of the criminal code be punished, but there must be some evidence to justify conviction. One suspected of violating the law cannot be convicted upon suspicion alone. That the evidence

in this case creates a suspicion as to the guilt of the appellant, is the most that can be said for it. That is not enough to warrant a judgment of conviction.

Reversed and remanded with instructions to dismiss.

PARKER, FRENCH, and MAIN, JJ., concur.

FULLERTON, J. (dissenting)—I am unable to subscribe to the foregoing opinion. Manifestly, it seems to me, there was sufficient evidence to warrant the jury in finding that the appellant was assisting in the maintenance of the still as a watchman or guard, even if not in its actual maintenance. In either event, the jury were warranted in finding him guilty of the crime with which he is charged.